CITIZENS BANK v. E. W. GROVE, JR., AND ST. LOUIS UNION TRUST COMPANY, EXECUTORS AND TRUSTEES OF THE ESTATE OF E. W. GROVE, DECEASED.

(Filed 27 January, 1932.)

1. **Executors and Administrators C d—Where estate receives benefit of proceeds of notes signed by deceased's agent the estate is liable.**

Where the general manager of certain concerns of the deceased borrows money on notes from a bank shortly after the death of the deceased and the proceeds thereof are used for the exclusive benefit of the deceased's estate, the personal representatives of the deceased are liable to the bank therefor in their representative capacity, although at the time of paying one of the notes they were unaware that the relationship between the general manager and the deceased was that of principal and agent, the estate having received the benefits of the unauthorized acts of the agent and the executors making no offer of restoration, they may not repudiate the acts of the agent to the injury of the other party, and having the power to make the contracts they also had the power to ratify them.

2. **Principal and Agent C a—Where proceeds of notes are used exclusively for estate the executors may ratify agent's unauthorized execution thereof.**

Although, ordinarily, death terminates the relationship of principal and agent, where the agent after the death of the principal executes notes, the proceeds of which are used for the exclusive benefit of the estate, the estate is liable therefor upon the principle that where the principal receives the benefits of an unauthorized act of the agent he will be deemed to have ratified the act as he will not be allowed to accept the benefits without bearing the burdens, the executors and trustees retaining the benefit of the notes for the estate having had the authority to make and execute the notes in the first instance.

3. **Executors and Administrators C c—Executors and trustees of estate held estopped to deny authority of agent appointed by them to execute notes.**

Where the executors and trustees of an estate appoint the manager of certain concerns of the deceased to continue to act in that capacity after the death of the deceased, and thereafter the manager executes certain notes the proceeds of which are used exclusively for the payment of debts contracted by the deceased before his death and to keep up the property of the deceased under his management, the executors and trustees are thereafter estopped to deny either that the acts of the manager in executing the notes were not within the scope of the employment or that they were ignorant of the fact that the relation which had existed between the deceased and manager prior to the deceased's death was that of principal and agent and not that of partners.

APPEAL by defendants from *Stack, J.,* at September Term, 1931, of MADISON.

The parties waived a trial by jury and agreed upon the following facts:

1. Citizens Bank is a corporation duly organized and was doing business at the time hereinafter mentioned in the county of Madison.

2. The defendants, E. W. Grove, Jr., and St. Louis Union Trust Company were the duly qualified executors of E. W. Grove, deceased, who died testate in the city of Asheville, on 27 January, 1927, and his last will and testament has been duly admitted to probate in the counties of Buncombe and Madison, in the State of North Carolina.

3. The defendants duly qualified as executors under said will in the State of North Carolina on 7 February, 1927, and have continued to administer said estate as such until this time.

4. The said E. W. Grove, deceased, for some time prior and up to the date of his death had done business in the State of North Carolina under the name and style of Grove-Ellerson Stone and Sand Company, and under the name and style of Laurel River Live Stock Company, and W. R. Ellerson, during such time, and up to the date of his death, had general management and control of the two businesses, operated

under the names and styles above mentioned, and from time to time, prior to and up to the death of the said E. W. Grove, deceased, the said W. R. Ellerson, under the name and style of Grove-Ellerson Stone and Sand Company, and Laurel River Live Stock Company, borrowed money and executed notes therefor, from the plaintiff bank, and carried accounts with the said bank, in the names of both Grove-Ellerson Stone and Sand Company and Laurel River Live Stock Company, checking the same out in the usual course of the business, on checks signed in the names and styles above mentioned, by him as manager.

5. Upon qualification of the defendants, the said W. R. Ellerson was employed by the defendant executors in connection with the administration of the property formerly operated under the name and style of Grove-Ellerson Stone and Sand Company, and Laurel River Live Stock Company, and continued in the service of said executors until about August, 1927.

6. On or about 8 February, 1927, the said W. R. Ellerson, in the name of the Grove-Ellerson Stone and Sand Company, executed and delivered to the plaintiff, Citizens Bank, a note of $1,000, due and payable on 7 March, 1927, in words and figures as set out in paragraph 6 of the complaint, except as to date and maturity, and, thereafter, in renewal of the note above mentioned, in the name of the Grove-Ellerson Stone and Sand Company, executed and delivered a note for the sum of $1,000, in words and figures as set out in paragraph 6 of said complaint, and the money received therefor was applied by the said Ellerson, to indebtedness of the defendants' testator, contracted in the name of Grove-Ellerson Stone and Sand Company, prior to the death of the said testator.

7. On or about 27 May, 1927, the said W. R. Ellerson, in the name of the Laurel River Live Stock Company, executed and delivered to the plaintiff, a note for $400, in words and figures as set out in paragraph 6 of said complaint, and the money received therefor deposited in plaintiffs' bank, under the name and style of Laurel River Live Stock Company, and $330.21 thereof applied to an overdraft of said account, as of 27 May, 1927, and the balance thereof applied in payment of general expense in the maintenance and preservation of the estate; the said overdraft having been created during the month of May, 1927, and applied to the general expense of the maintenance and preservation of the estate.

8. The defendant executors had no knowledge of the execution and delivery of the notes hereinbefore mentioned, until some time in September, 1927, when demand was made by the plaintiff bank for the payment thereof, and payment refused, and both of the said notes were at the institution of this action and still are, unpaid.

9. The settlement by the defendants with W. R. Ellerson, individually, as alleged in paragraph 7 of said complaint, had no bearing on, and did not involve the subject-matter of this cause of action.

10. The defendants paid to the plaintiff bank a note, executed by W. R. Ellerson, in the name of Grove-Ellerson Stone and Sand Company, dated 25 February, 1927, and paid as aforesaid, on 31 December, 1928, said payment having been made under the mistaken apprehension on their part that the relation between Ellerson and their testator was that of partners.

11. The negotiations and transactions between the said plaintiff and the said Ellerson, were made in good faith on the part of both, but without the knowledge of the defendant executors.

His Honor gave judgment for the plaintiff, noting therein that the estate of E. W. Grove (the testator) had received the benefit of the loans. The defendants excepted and appealed.

*John A. Hendricks and C. B. Mashburn for plaintiff.*
*Merrimon, Adams & Adams for defendants.*

ADAMS, J. The appellants concede the familiar doctrine that as a general rule all simple agencies are terminated by the death of the principal. *Duckworth v. Orr,* 126 N. C., 674; *Wainwright v. Massenburg,* 129 N. C., 46; *Fisher v. Trust Co.,* 138 N. C., 90. But they say that the doctrine of ratification or estoppel precludes the appellants from asserting this defense. Whether they are correct must be determined by applying the law to the facts upon which the parties have agreed.

It is admitted that for sometime immediately preceding the testator's death Ellerson had had the general management and control of the business transacted by the Grove-Ellerson Stone and Sand Company and the Laurel River Live Stock Company, under each of which titles E. W. Grove had conducted the business. For the benefit of these concerns Ellerson borrowed money from the plaintiff, made deposits in the name of each company, and checked the money out in the usual course of business.

The testator, E. W. Grove, died on 27 January, 1927. On 6 February Ellerson, in the name of Grove-Ellerson Stone and Sand Company, executed and delivered to the plaintiff a note of $1,000, which he renewed at maturity. The money he received on this note was applied to certain indebtedness of the testator contracted during his lifetime in the name of the company; and the debt, had it not been paid, would be a present claim against the estate, for the payment of which the defendants in their representative capacity could be held responsible.

The money received on the note of $400 executed on 27 May, 1927, by the Laurel River Live Stock Company was applied in part to an overdraft on its account with the plaintiff and in part to the maintenance and preservation of the estate. True, the overdraft occurred in the month of May, but the amount derived from the overdraft had previously been applied to the general cost of preserving the property and maintaining the business. So, the proceeds of both notes were used for the exclusive benefit of the testator's estate.

To the appellants' contention that the death of the testator terminated the agency and that Ellerson had no authority to borrow the money or to execute the notes, several answers may be given. Where an agent who is not authorized to do so borrows money on behalf of his principal and applies it in satisfaction of the legal obligations of his principal and the latter knowingly retains the benefits of such payments, the transaction constitutes as between the principal and the lender the relation of debtor and creditor. Having received the benefits of the unauthorized act the principal will be deemed to have ratified the act and to have barred his repudiation of it to the injury of the other party. He cannot accept the benefits without bearing the burdens; he must duly repudiate the transaction or perform the contract in its integrity. *Lane v. Dudley,* 6 N. C., 119; *Miller v. Lumber Co.,* 66 N. C., 503; *Rudasill v. Falls,* 92 N. C., 222; *Christian v. Yarborough,* 124 N. C., 72; *Hall v. Giessell,* 179 N. C., 657.

The appellants knew nothing of the execution of the notes until September, 1927, when the plaintiff demanded payment. In response to the demand they disclaimed liability but made no offer of restitution, content no doubt with the benefits the estate had received. The agent's acts, it may be noted, were not void, illegal, or contrary to public policy; at most they were merely voidable. Any one who has the capacity to make a contract of agency may ratify an act assumed to be done in his behalf without authority; and, according to the maxim, every ratification has a retroactive effect and is equivalent to a prior command.

When the appellants qualified they employed Ellerson "in connection with the administration of the property" formerly operated by the two companies of which he had been appointed general manager by the testator. They qualified as executors and trustees—not only as personal representatives but as trustees of the property. The fifth paragraph of the agreed statement indicates that the appellants continued or renewed Ellerson's appointment. This, we think, is a natural and logical interpretation which should estop the appellants from claiming either that the acts they complain of were not within the scope of the employment or that at the time they paid the plaintiff a note executed by

Ellerson in the name of the Grove-Ellerson Stone and Sand Company, which, the appellee insists, was an express ratification of the agent's authority, they were ignorant of the relation that had existed between Ellerson and their testator. It was incumbent upon them to know the relation.

It may incidentally be remarked in conclusion that *Snipes v. Monds,* 190 N. C., 190, cited by the appellants is not applicable to the facts. See C. S., 176(a). Judgment

Affirmed.